1

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | DISTRICT OF MINNESOTA |

- - - - - - - - - - - - - - - - - - - - - - - - - - -

3    Charles Everett Cook, Sylvia Mae Cook,
     and Timothy Blake Cook, natural persons,
4             Plaintiffs,

5    vs                          Court File 06-0022

6    City of Minneapolis, a municipal entity;
     Minneapolis Police Officer Mark Johnson, Badge
7    #003459, in his individual, personal and official
     capacity, Sgt. D. Smulski, in his individual,
8    personal and official capacity; Officer K. Blackwell,
     in his individual, personal and official capacity;
9    Officer Geoffrey Toscano, Badge #007257, in his
     individual, personal and official capacity; Officer
10   Bevsn Blauert, Badge #003459 in his individual,
     personal and official capacity; Officer Jon Petron,
11   Badge #4671, in his individual, personal and official
     capacity; Officer Christopher House, Badge #3165, in his
12   individual, personal and official capacity; Sgt. Robert
     Kroll, Badge #003874, in his individual, personal and
13   official capacity; Officer Christie Nelson, Badge #4959, in
     her individual, personal and official capacity; Officer
14   William Willner, Badge #7783, in his individual, personal
     and official capacity; Officer Westlund, Badge #7674, in
15   his individual, personal and official capacity; Officer
     Roger Smith, Badge #006689, in his individual, personal and
16   official capacity; Officer Jason King, Badge #003704, in
     his individual, personal and official capacity; Officer
17   Timothy Hands, Badge #002660, in his individual, personal
     and official capacity; and Officer Jane Doe and Richard
18   Roe, unknown, unnamed officers of the Minneapolis, in their
     personal, individual

19   and official capacity;

20            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

21
        Whereupon, the following deposition was taken of
DONALD

22   SMULSKI, pursuant to Notice, according to the Rules of
     Civil Procedure for the State of Minnesota, taken on
the

23   13th day of February, 2007 before Lorie M. Jensen,
Notary

        Public, Washington County, Minnesota.
24

25


                    Jensen Reporting   (651) 351-9500



2


1        APPEARANCES:

2

3        Albert T. Goins, Attorney at Law, Goins Petry
Law, 301

4   Fourth Avenue South, 378 Grain Exchange Building,

5   Minneapolis, Minnesota 55415, appearing as Counsel for
and

6   on behalf of the Plaintiffs;

7

8        Tracy Nelson, Assistant City Attorney, City
Attorney's

9   Office, 333 South 7th Street, Suite 300, Minneapolis,

10   Minnesota 55402, appearing as Counsel for and on
behalf of

11   the Defendants.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Jensen Reporting   (651) 351-9500

3

1

2       INDEX:

3

4       EXAMINATION BY:

5

6       Mr. Goins          4

7

8

9

10      EXHIBITS:

11

12      Smulski Deposition Exhibit

13      Number 1 - Page 11

14

15      OBJECTIONS:

16      BY MS. NELSON:   Page 7

17

18

19

20

21

22

23

24

25


Jensen Reporting  (651) 351-9500



4



1   Whereupon, the following proceedings were duly held
and

2   made a part of the record, as follows, to-wit:

3                DONALD SMULSKI,

4        having been first duly sworn, was examined,

5         and testified, under oath, as follows:

6                         EXAMINATION:

7    BY MR. GOINS:

8    Q.   State your full name, please?

9    A.   Sergeant Donald L. Smulski.  S-m-u-l-s-k-i.

10   Q.   Sergeant Smulski, you've had your deposition taken

11        before, correct?

12   A.   Yes.

13   Q.   And tell me, first of all, what your employment is for

14        the record?

15   A.   I am currently a uniformed patrol supervisor,

16        considered a Sergeant.

17   Q.   That's with the MPD, Minneapolis Police Department?

18   A.   Yes.

19   Q.   How long have you been with the Minneapolis Police

20        Department?

21   A.   It will be 20 years next Friday.

22   Q.   Congratulations.

23   A.   Thank you.

24   Q.   What was your prior assignment, let me get more detail

25        about your current assignment.  You said you're a

5

1      supervisor uniformed patrol, what precinct is that?

2   A.   3rd Precinct, Lake and Minnehaha.

3   Q.   Would you have jurisdiction for lack of a better word

4        over 3845 2nd Avenue South?

5   A.   Yes.

6   Q.   Were you there for a search on or about January 13,

7        2005?

8   A.   Yes.

9   Q.   What was the nature of that search?

10  A.   For evidence connected to a robbery.

11  Q.   Okay.  Do you recall the nature of that search

12       warrant, what I'm asking is do you remember if it was

13       a knock and announce or a no-knock?

14  A.   I believe it was a no-knock.

15  Q.   Do you remember if it was a night time warrant?

16  A.   Yes.

17  Q.   Do you remember when you went in on that warrant?

18  A.   It was around our military time 2230 hours.

19  Q.   That would have been about 10:30 at night?

20  A.   10:30.

21  Q.   Who was in charge of that search?

22  A.   Are you referring to the entry or the actual search of

23       the residence I guess?

24  Q.   Let's start with the search of the residence?

```
         25   A.   Technically I was the Sergeant of the team that
was
```

6

```
          1        there for the search.
          2   Q.   Okay.  Who was in charge of the entry?
          3   A.   Sergeant Kroll.
          4   Q.   Is that Sergeant Robert Kroll?
          5   A.   Yes.
          6   Q.   Who involved him in this search?
          7   A.   I would have.
          8   Q.   Why did you do that?
          9   A.   Based on our policy the criteria is if it's
considered
         10        a high risk with weapons, or the nature of what
the
         11        suspects are involved with, by policy we need to
use
         12        our entry team to get us into the place so we can
         13        execute the search warrant.
         14   Q.   Okay.  So in other words, what is the policy, why
         15        don't you tell me a little bit about that?
         16   A.   Like I just explained, if you know the person
possibly
         17        could have been armed in the place, or the
likelihood
         18        that some type of serious injury could happen to
you
```

19        or whatever, then we need to use an entry team.

20   Q.   Okay.  Have you ever worked with Sergeant Kroll

21        before?

22   A.   Yes.

23   Q.   On entry situations?

24   A.   I believe so.

25   Q.   Okay.  When you've worked with him in the past,
has he

Jensen Reporting  (651) 351-9500

7

1        had occasion to use force?

2   A.   I guess.

3                    MS. NELSON:  I'll object as vague.

4                    MR. GOINS:  Okay.

5   Mr. Goins (Continuing)

6   Q.   You can go ahead and answer that.

7   A.   I guess I per se never went in on an entry with
him so

8        I don't know what he does inside a place.

9   Q.   So you never been actually in an entry with
Sergeant

10       Kroll before this date of January --

11   A.  As a perimeter we probably have used him in the
past

12       to make an entry into a place for us but I'm not
part

```
          13         of the entry team so that would probably clarify
it.

          14    Q.  You haven't actually been in in going in with him
as

          15         part of the entry team to see what kind of force
he

          16         used in the past?

          17    A.  I'm not part of the ERU so I wouldn't be
qualified to

          18         go in with him on an entry.

          19    Q.  Maybe I can clarify it like this.  When you have
ERU,

          20         is it the case that the officers who are
executing the

          21         warrant wait for ERU to go in, secure the
location and

          22         once it's secured then other officers enter, is
that

          23         correct?

          24    A.  Yes.

          25    Q.  On this particular date on 1-13-05 after you and
```

8

```
          1         Officer Blackwell had prepared the search warrant
and

          2         presented it to Judge Beloiz, it was actually
Sergeant

          3         Kroll who made the initial entry into the
residence at

          4         that 3845 2nd Avenue South address, correct?
```

5    A.    Yes.

6    Q.    Do you know how long it took Sergeant Kroll and his

7          1280 team to secure the residence?

8    A.    I don't recall.

9    Q.    But would it be fair to say that they went in before

10         you went in?

11   A.    Yes.

12   Q.    Would it be fair to say that his team is approximately

13         four to five officers?

14   A.    Yes.

15   Q.    Who conducted, if any was conducted, the briefing with

16         respect to this search warrant?

17   A.    Well, it's a two part briefing.  One is we explained

18         to whichever entry sergeant is going to be making the

19         entry what the elements of why we're going in there,

20         they're shown a couple of search warrant.  We make out

21         what is called an ERU high risk entry form which is it

22         explains certain criteria of checking the box.  If

23         those boxes criteria meet the criteria for the area we

24         are suppose to use them, we give them that form.

25         Afterwards any operational deployment is with the ERU

Jensen Reporting  (651) 351-9500


9


            1         people as far as approach, entry and the
establishing

            2         the interior of a residence.

            3    Q.   Okay.  Now when you did enter and in fact let's

            4         establish, did you actually enter 3845 2nd Avenue

            5         South at some point in that evening?

            6    A.   Yes.

            7    Q.   When you entered, what did you see?

            8    A.   Initial was an elderly gentleman laying
unhandcuffed

            9         on the floor.

           10    Q.   Do you know who, let me interrupt you, do you
know who

           11         put him on the floor?

           12    A.   No.

           13    Q.   Go ahead.

           14    A.   There's another middle aged individual that was

           15         handcuffed yelling quite boisterous on the floor
not

           16         too far from him.

           17    Q.   Can you describe that individual?

           18    A.   Heavy set black male, I think it was Tim was his
first

           19         name was.

           20    Q.   Would that have been Timothy Cook?

           21    A.   Yes.

22   Q.   You said he was or was not handcuffed?

23   A.   He was.

24   Q.   Front or back?

25   A.   I don't recall.


Jensen Reporting   (651) 351-9500


10


1    Q.   Do you know who handcuffed him and placed him on
the

2         floor?

3    A.   No.

4    Q.   Did you see any force applied to him?

5    A.   No.

6    Q.   What else did you see?

7    A.   There was an elderly female and two to three
females

8         with children on a touch in the living room just
off

9         the doorway, front door.

10   Q.   That elderly female, did you ever get her name?

11   A.   Sylvia sticks out but I would have to look at my

12        report.

13   Q.   Okay.  Do you think that was maybe Sylvia Cook?

14   A.   Yes.

15   Q.   All right.  Did you see if she was cuffed, I
missed

16        that, was she cuffed or not cuffed?

17   A.   I don't believe she was.

18   Q.   Do you know if any force was used against her?

19   A.   No.

20   Q.   Let me clarify that.  I've learned this from your

21        colleague Lynne Fundsingland when I ask double

22        negatives.  Did you see any force used against

her,

23        Sergeant?

24   A.   No.

25   Q.   Do you know if any force was used against her?


                    Jensen Reporting  (651) 351-9500



11


1   A.   I don't know.

2   Q.   Okay.  Thank you.  In addition to Sergeant Kroll,

let

3        me see if I can get the names correct for the

high

4        risk entry team.  Officer Hanks?

5   A.   Yes.

6   Q.   Officer Stender?

7   A.   No.

8   Q.   He was not part of that?

9   A.   No, I don't believe he was.

10   Q.   How about Officer King?

11   A.   Yes.

12   Q.   How about Officer Blauert?

13   A.   Yes.

14   Q.   How about Officer Toscano?

15   A.   Yes.

16   Q.   How about Officer Smith?

17   A.   Do you know which one?

18   Q.   Good question.  Officer R. Smith, that would be
Roger?

19   A.   Yes.

20   Q.   That's Big Roger?

21   A.   Yes.

22   Q.   Okay.  Let me just show you this, have it marked

23        Exhibit 1.

24                     (Whereupon, Smulski Deposition
Exhibit

25        Number 1 was marked for identification by the
Court

Jensen Reporting  (651) 351-9500

12

1        Reporter.)

2   Mr. Goins  (Continuing)

3   Q.   Showing you what's been marked as Smulski Exhibit
1,

4        would you take a look at that, please?

5   A.   Yes.

6   Q.   What is that?

7    A.    That is a supplement Officer Blackwell and I
prepared

8          after the search that day.

9    Q.    Okay.  Now who actually wrote that report, you or

10         Officer Blackwell?

11   A.    We did it jointly.

12   Q.    Where is Officer Blackwell right now, do you
know?

13   A.    On deployment in Iraq.

14   Q.    Okay.  Do you know how long she's been gone?

15   A.    I want to say --

16   Q.    If you don't know, that's fine.

17   A.    I want to say close to 18 months it would be in
April.

18   Q.    That's Officer Katie Blackwell?

19   A.    Yes.

20   Q.    Showing you what's been marked as Nelson Exhibit
2, do

21         you recognize that document?

22   A.    Yes.

23   Q.    What is that?

24   A.    Normally in old school referred to as page 4 of
the

25         search warrant but it's 21 here.  It's the copy
giving


Jensen Reporting  (651) 351-9500


13

```
          1          us actual permission by the courts to go into a
house.

          2    Q.   Do you notice if that gives you -- you're
familiar

          3          with search warrants, correct?

          4    A.   Yes.

          5    Q.   Do you know if that gives you no-knock authority,
what

          6          is called authority to enter without
announcement?

          7    A.   It would be on Page 13.

          8    Q.   Are you sure it's not on there?

          9    A.   Court further finds enter without announcement of

         10          authority and purpose.

         11    Q.   That's a no-knock warrant?

         12    A.   Yes.

         13    Q.   Is it a night time warrant?

         14    A.   Yes.

         15    Q.   Do you know what the application for the warrant
said

         16          that Officer Blackwell prepared?

         17    A.   Referring to the Page 13?

         18    Q.   Right.

         19    A.   I don't offhand.

         20    Q.   You didn't prepare the 13 page?

         21    A.   I was there with her but I don't recall without
the

         22          copy what it first states per se.

         23    Q.   Sure.  You're aware to get the no-knock as
opposed to

         24          the night time authority you got to provide
certain

         25          showings to the court, you know that, right?
```

Jensen Reporting  (651) 351-9500

14

```
      1  A.   Yes.

      2  Q.   Those showings would have been made by Officer
Katie

      3       Blackwell, is that correct?

      4  A.   Yes.

      5  Q.   To the extent you know that was done, that's who
would

      6       have done it, right?

      7  A.   Yes.

      8  Q.   Did you see anyone abused while they were in the

      9       house?

     10  A.   No.

     11  Q.   Did you hear any foul language used towards
anyone?

     12  A.   No.

     13  Q.   Again, can you give me an estimate about how long
it

     14       would have been you would have entered after
Sergeant

     15       Kroll and his team entered?

     16  A.   No, I don't recall.

     17  Q.   Do you think it was maybe a matter of minutes?

     18  A.   I would say less than five would probably be a
safe

     19       surmise.
```

20   Q.   That's fine.

21                    MR. GOINS:  All right.

22                    MS. NELSON:  We'll read and sign.

23

24                    * * * * * * * *

25


Jensen Reporting  (651) 351-9500


15


1

2              VERIFICATION

3       I, Donald Smulski, the undersigned, do hereby
certify

4    that the foregoing deposition of my testimony is a
true and

5    correct reproduction of same, except for the following

6    changes if any, stating the page and line number of
said

7    change; also stating the reason.

8    Page     Line      Change                    Reason

9    _____    _____    _____
_____

10   _____    _____    _____
_____

11   _____    _____    _____
_____

12   _____    _____    _____
_____

13  _____  _____  _____
_____

14  _____  _____  _____
_____

15  _____  _____  _____
_____

16  _____  _____  _____
_____

17  _____  _____  _____
_____

18  _____  _____  _____
_____

19  _____  _____  _____
_____

20  _____  _____  _____
_____

21  _____          _____

22  Donald Smulski                  Date

23  _____

24  WITNESS MY HAND AND SEAL this _____ day of
_____,

25  2007


            Jensen Reporting  (651) 351-9500




16


        1

        2       STATE OF MINNESOTA              )

        3                                       )
                COUNTY OF WASHINGTON            )
        4

        5       I, Lorie M. Jensen, Notary Public, Washington

County,

     6    Minnesota, took the foregoing deposition of DONALD
SMULSKI,

     7    that the witness was by me first duly sworn;

     8       That the testimony was transcribed under my
direction

     9    and is a true record of the testimony of the witness;

    10       That the cost of the original has been charged to
the

    11    party who noticed the deposition, and that all parties
who

    12    ordered copies have been charged at the same rate for
such

    13    copies;

    14       That I am not a relative or employee or attorney
or

    15    counsel of any of the parties, or a relative or
employee of

    16    such attorney or counsel;

    17       That I am not financially interested in the
action and

    18    have no contract with the parties, attorneys, or
person

    19    with an interest in the action that affects or has a

    20    substantial tendency to affect my impartiality.

    21       Dated this 17th day of February, 2007.

    22

_____

    23                         Lorie M. Jensen, Notary
Public

    24                         Washington County, Minnesota

    25