# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Charles Everett Cook, Sylvia Mae Cook,
and Timothy Blake Cook, natural persons,

                          Court File No.: 06-00579 (DWF/AJB)

              Plaintiffs,        **PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO PARTIAL
SUMMARY JUDGMENT MOTION**

**v.**

City of Minneapolis, a municipal entity;
Minneapolis Police Officer Mark Johnson,
Badge # 003459, in his individual, personal and
official capacity; Sgt. D. Smulski, in his individual,
personal and official capacity; Officer K. Blackwell,
in his individual, personal and official capacity;
Officer Geoffrey Toscano, Badge # 007257,
in his individual, personal and official capacity;
Officer Bevan Blauert, Badge # 003459
in his individual, personal and official capacity;
Officer Jon Petron, Badge # 4671, in his
individual, personal and official capacity;
Officer Christopher House, Badge # 3165,
in his individual, personal and official capacity;
Sgt. Robert Kroll, Badge # 003874, in his
individual, personal and official capacity;
Officer Christie Nelson, Badge #4959, in her
individual, personal and official capacity;
Officer William Willner, Badge # 7783,
in his individual, personal and official capacity;
Officer Westlund, Badge # 7674, in his
individual, personal and official capacity;
Officer Roger Smith, Badge #006689, in his
individual, personal and official capacity;
Officer Jason King, Badge #003704, in his
individual, personal and official capacity;
Officer Timothy Hands, Badge #002660,
in his individual, personal and official capacity;
and Officer Jane Doe and Richard Roe, unknown,
unnamed officers of the Minneapolis, in their
personal, individual, and official capacity;

                    Defendants.

1

## INTRODUCTION

Plaintiffs, Everett Cook, Sylvia Cook and Timothy Cook (hereinafter "The Cook Family" or Plaintiffs) respectfully oppose the Defendants' Motion for Partial Summary Judgment. Plaintiffs' initial six-count Complaint asserted claims originally lodged in Hennepin County District Court as follows:

1. **Common Law Conversion based on illegal seizure of cash and other household property;**

2. **Common Law Assault;**

3. **Common Law Battery;**

4. **Intentional Infliction of Emotional Distress;**

5. **Negligent Infliction of Emotional Distress;**

6. **Claims under 42 United States Code Section 1983;**

7. **A claim under Minnesota Human Rights Act (Minnesota Statutes Section 363A for discrimination in provision of public services).**

At the outset, the Court should note that Defendants' **have not** sought summary judgment on Plaintiff Timothy Blake Cook's claims for common law assault, common law battery, or excessive force based on the Fourth Amendment brought pursuant to Section 1983.

Therefore, Plaintiffs will address the arguments that the claims of Charles and Sylvia Cook should remain for trial and subsume therein the remaining claims of Mr. Timothy Cook as not being subject to summary dismissal.

## STATEMENT OF DISPUTED FACTS

Defendants' Motion for Summary Judgment is premature and incomplete because it fails to present the Court with the complete record. Defendants' Memorandum "Statement of  the Record" recites to the "Affidavit of Tracey Nelson", counsel for the Minneapolis Defendants.  Defendants' Memorandum then blithely misstates the contents of that affidavit as containing the "the deposition testimony of Charles Cook, Sylvia Mae Cook, Timothy Blake Cook…." and certain of the Defendant officers.  However, Ms. Nelson's affidavit only includes highly selected portions of the entire deposition testimony of the three individual Plaintiffs—thus giving the Court a misleading portrait of the facts in this case. Therefore, because the Defendants have failed to meet their initial summary judgment burden under Rule 56, their partial summary judgment motion should be denied in its entirety.

## FACTUAL BACKGROUND

At approximately 10:30 p.m. on January 13, 2005, the Minneapolis Police SWAT Team entered a home located at 3845 2nd Avenue South in Minneapolis, Minnesota. The plaintiffs in this matter are some of the occupants of the home. On the day of the incident the weather was well below zero degrees.

At the time of the incident Plaintiff Sylvia Cook was in the living room sitting on her sofa. Also in the living room with her were her two adult granddaughters and their children (2 children each). (Dep. Of Sylvia Cook, Pg. 10, Ln 2-4). Plaintiff Charles Cook was upstairs resting when the police entered, but came downstairs during the incident to see what was going on in his home. (Dep. Of Charles Cook, Pg. 17, Ln 3-8). Mrs. Cook was frightened when the police entered her home as were her grandchildren and great grandchildren. As a result, everybody began screaming when the police entered. (Dep. Of Sylvia Cook, Pg. 11, Ln 1-8).

Family members asked the police why they were present; however, their inquires were not addressed. Mrs. Cook specifically asked officers why they were there. (Dep. Of Sylvia Cook, Pg. 11, Ln 1-8).

Plaintiffs Charles and Sylvia Cook both have significant health issues. Charles Cook suffers from kidney disease and is diabetic and he has heart problems. Due to his diabetes, he takes dialysis several times a week and receives

other regular treatment.  He receives regular treatment for his heart condition as well.  (Dep. Of Charles Cook, Pg. 14, Ln 14-25; Pg. 15, Ln 1-8).  In order to utilize the dialysis machine Charles Cook has an access.  At the time of the incident he had a stint or catheter in his neck.  The stint was clearly visible.  This was used for accessing the dialysis machine.  (Dep. Of Charles Cook, Pg. 15, Ln 12-14; Dep. Of Charles Cook, Pg. 23, Ln 8-20).  While some officers indicated that did not see the catheter, others indicated that they did, including, Officer Hanks Dep. of Off. Hanks.  Sylvia Cook has suffered from seizures for her entire life.  While she had them on occasion throughout the year before the incident, her seizures have increased since the incident.  (Dep. Of Sylvia Cook, Pg. 2, Ln 22-25; Pg 28, Ln 1-25; Pg 29, Ln 1-11).

As Charles Cook came down the stairs to see what was going on, he was forced to  the ground by Lt. Kroll despite the fact that he was ill and had a visible stint hanging  from his neck.  Additionally, he was kicked and Lt. Kroll placed his foot in his back.   (Dep. Of Sylvia Cook, Pg. 15, Ln 1-15).  He was required to remain on the ground in front of the open door in the cold air. He continuously asked for a blanket as did his wife.   (Dep. Of Sylvia Cook, Pg. 12, Ln 9-16; Dep. Of Charles Cook, Pg. 20, Ln 3-6).  Mrs. Cook also continuously asked the officers to cover up her young great grandchildren, but these requests were not responded to for a significant period of time.  (Dep. Of Sylvia Cook, Pg. 11, Ln 16-18).

At the time of the incident the plaintiffs feared for their lives and were frightened.  They also feared for the lives of their grandchildren and other family members present.  (Dep. Of Sylvia Cook, Pg. 14, Ln 12-15; Pg 30, Ln 8-10).

The officers continuously treated the plaintiffs with disrespect and used vulgar language such as "bitch" "fuck" and other derogatory terms in the presence of children.   (Dep. Of Charles Cook, Pg. 20, Ln 9-20; Dep. Of Sylvia Cook, Pg. 31, Ln 1-5; Pg 38, 6-14).

Plaintiffs did suffer harm from the incident.  Plaintiff Sylvia Cook suffered from a severe case of bronchitis, which was treated.  (Dep. Of Sylvia Cook, Pg. 22, Ln 1-13; Pg. 24, Ln 15-17).  All three plaintiffs suffered emotional stress as a result of the incident.   This damage includes regular nightmares and fear while in their own home.  Also, the grandchildren and great grandchildren remain afraid. This causes additional emotional distress for all of the plaintiffs. (Dep. Of Sylvia Cook, Pg. 24, Ln 1-12).

## LEGAL ARGUMENT

## I.    THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if an examination of the pleadings, depositions, answers, admissions, and affidavits on file show that there are no genuine issues as to any material fact and either party is entitled to judgment.. Fed.

R. Civ. P. 56.  The evidence in such a motion is viewed in the light most favorable to the non-moving party.

With respect to a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party. See *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir.2005). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317 at 323 (1986).

When reviewing the record in connection with a motion for summary judgment, the court may not weigh the evidence, determine credibility, or decide the truth of any factual matter in dispute. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Tatum v. City of Berkeley, 408 F.3d 543, 549* (8th Cir.2005).


**A. DEFENDANTS HAVE FAILED IN MEETING THE
SUMMARY JUDGMENT STANDARD'S BURDEN.**

The court's review of the approximately one dozen depositions taken in this case will reflect that Defendants have not removed any and all material factual

disputes. Therefore, summary judgment is not appropriate. See Declaration of

Albert Turner Goins, Sr. and related Supplemental Declaration.

## II.   DEFENDANTS ARE <u>NOT</u> ENTITLED TO OFFICIAL IMMUNITY BECAUSE THERE IS ABUNDANT EVIDENCE OF MALICE.

The common law doctrine of official immunity protects government

employees who may be subject to liability due to the performance of their work

duties. <u>Davis v. Hennepin County</u>, 559 N.W.2d 117, 122 (Minn.App.1997), *review

denied* (Minn. May 20, 1997). Official immunity protects an employee " 'from the

fear of personal liability that might deter independent action.' " <u>Janklow v.

Minnesota Bd. of Exam'rs for Nursing Home Adm'rs.,</u> 552 N.W.2d 711, 715

(Minn.1996) (quoting <u>Elwood v. Rice County,</u> 423 N.W.2d 671, 678

(Minn.1988)). Under the doctrine, "individual governmental actors * * * remain

immune only if they do not act maliciously or intentionally." <u>Janklow</u>, 552 N.W.2d

at 716; <u>see Rico v. State</u>, 472 N.W.2d 100, 107 (Minn.1991) (conduct malicious or

willful only if official intentionally commits act official "then has reason to believe

is prohibited"). By the same token, while the doctrine of official immunity is

intended to protect bona fide law enforcement practices, it is not intended to shield

police brutality. Accordingly, liability will attach when a police officer

intentionally commits an act which the officer, at the time of the act, has reason to

believe is wrong. See <u>Baker v. Chaplin</u>, 497 N.W.2d 314, 318 (Minn.App.1993)

(summary judgment denied where police officer, claiming official immunity, allegedly used deadly force with baton on cooperative demonstrator) (citation omitted), *aff'd,* 517 N.W.2d 911 (Minn.1994), *cert. denied,* 513 U.S. 1077, 115 S.Ct. 723, 130 L.Ed.2d 628 (1995).  "Whether an officer's conduct merits immunity * * * turns on the facts of each case." Elwood, 423 N.W.2d at 678.

The actions of the ERU or SWAT unit officers led by then Sgt. Kroll (now Lt. Kroll) in swarming into a house filled with an elderly couple and toddler age children and pointing automatic weapons into their faces and using profanity while "poke checking" and kicking them certainly provide this Court with sufficient evidence of willful and malicious conduct. It is irrelevant that the action of entering the residence was "discretionary" and not ministerial, where the conduct of the officers is freighted with a willful disregard of the rights of those present in the residence.

Once more, Defendants forget that this case is before the Court on their partial motion for summary judgment—a motion which they apparently concede cannot be for complete summary judgment because of the misconduct of their own officers in applying excessive force as to Timothy Blake Cook, the son of Mr. and Mrs. Charles and Sylvia Cook. At the summary judgment stage, all facts and inferences are to be construed most favorably for the Plaintiffs.

Thus, Lt. Kroll's deposition alone provides sufficient factual support for the claim that officers acted with a malicious and callous disregard of the rights and humanity of the occupants at 3845 2nd Avenue South.

Moreover, the Defendants' Memorandum at pages 10-12, Part II., provides the Court with simply <u>no analysis</u> to support a claim for official immunity from suit on behalf of these officer defendants for their overwhelmingly outrageous conduct towards Plaintiffs. Defendants merely recite the law of official immunity in Minnesota without explaining to the Court how these officers (or their actions) are entitled to it. Further, because the Defendants' summary judgment submissions seemingly ignore the actions of Officers Kroll, Johnson, Hanks and Smith, those officers cannot possibly be entitled to obtain summary judgment.

## A. PLAINTIFFS' CONVERSION CLAIM.

Plaintiffs' conversion claim survives summary judgment because Defendants' have not shown at the summary judgment stage that actions of the officers in destroying property were "necessary to effectively execute that warrant." See Defts. Memorandum  at p. 12.  While Plaintiffs may initially agree at the outset with that proposition of law, Plaintiffs also advise the Court that <u>Ginter v. Stallcup</u>, 869 F.2d 384 (8th Cir. 1989) is a qualified immunity case—analyzing the reasonableness requirement of the Fourth Amendment  in a case involving destruction of private property during execution of a search warrant. Therefore, it

10

is not directly applicable to the analysis of Plaintiffs' Conversion claim. Conversion as a common law tort must, therefore, be analyzed under Minnesota tort law—and, any defense asserted by these officers must be viewed in the light of their supposed claims for official immunity. The Defendants Memorandum at pages 12-13 provides no official immunity-based analysis until page 13. Defendants argue that simply because the officers had a search warrant, they were authorized to "search the entire premises of the Property." They then argue that if the Cooks cannot precisely identify all property taken they have no claim for conversion. However, Plaintiffs have already asserted that $160.00 in cash was taken and Timothy Cook has testified as to the destruction of certain computer or electronics equipment.

Quizzically, Defendants next argue that because conversion is not a tort of malice or ill-will that Plaintiffs are barred by official immunity. This logic is approaching the absurd. The claim that officers destroyed property wantonly has never been overcome by these Defendants and is supported by the testimony of Plaintiffs. Thus, the Conversion claim should persist.

## B. THE TORTS OF ASSAULT AND BATTERY.

Plaintiffs Charles and Sylvia Cooks claims for common law assault should survive summary judgment because a factual dispute exists as to the actions of the officers based on the memorandum of Defendants at pages 13 through 16. Plainly,

the display of automatic and semi-automatic weapons sweeping across the bodies

of Plaintiffs and their family members—including toddler aged children, created a

reasonable apprehension of fear of bodily harm by Plaintiffs Charles and Sylvia

Cook. Defendants' arguments at page 14 of their memorandum fail because these

officers were not effecting an arrest. At most, they were **detaining** the residents

subject to execution of the search warrant.  Further, the record evidence contradicts

Defendants' claims that neither Charles nor Sylvia Cook was placed in fear or

apprehension by the officers' actions. The fact that Mrs. Cook continued to act out

of fear and self-sacrifice for her children and grandchildren doesn't change the fact

of her apprehension—it simply reinforces it. Once more, an argument made by

Defendants verging upon the absurd.

Moreover, the "reasonableness" of the officers' actions is not analytically

significant at the summary judgment stage—the claims of assault (and battery) are

only barred if Defendants can show they acted in a discretionary manner and

without malice or willful disregard of Plaintiffs' rights. They can neither make

such a showing—nor have they have they argued an absence of malice (or good

faith) with respect to their actions towards Charles and Sylvia Cook. Whether the

force was "excessive, as a matter of law" is legally irrelevant for this Court's

inquiry into official immunity as a defense to these claims.   Malice, on the other

hand, requires proof of a wrongful invasion of the rights of another. In *Rico v.*

*State,* 472 N.W.2d 100 (Minn.1991), the court held that malice "means nothing

more than the intentional doing of a wrongful act without legal justification or

excuse, or, otherwise stated, the willful violation of a known right." *Id.* at 107

(quoting <u>Carnes v. St. Paul Union Stockyards Co.</u>, 164 Minn. 457, 462, 205 N.W.

630, 631 (1925)). Malice in the context of official immunity means intentionally

committing an act that the official has reason to believe is legally prohibited.  <u>State</u>

<u>by Beaulieu v. City of Mounds View</u>, 518 N.W.2d 567, 571 (Minn.1994). There

are sufficient facts at present to infer malice based on the conduct of the ERU team

officers.


### C. THE TORTS OF INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

The elements of a claim for intentional infliction of emotional distress are

well-known.   In <u>Hubbard v. United Press Int'l, Inc.</u>, 330 N.W.2d 428 (Minn.1983),

the supreme court of Minnesota held that the tort of intentional infliction of

emotional distress requires proof that: (1) the conduct complained of was extreme

and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused

emotional distress; (4) and the distress suffered was severe. <u>*Id.* at 438-39.</u> The

conduct must be "so atrocious that it passes the boundaries of decency and is

utterly intolerable to the civilized community." *Id.* at 439 (citations omitted).

While the conduct must be outrageous however, it need not be illegal or be

accompanied by another wrongful or illegal act. *See id.* at 438 (no underlying tort required to prove intentional infliction of emotional distress).

A comment accompanying the Restatement of Torts, adopted by the Minnesota high court in Hubbard, 330 N.W.2d at 438, notes that intentional infliction of emotional distress is "a separate and distinct basis of tort liability, without the presence of the elements necessary to any other tort, such as assault, battery, false imprisonment, trespass to land, or the like." Restatement (Second) of Torts, § 46, cmt. b (1965).

Plainly, the conduct of officers in entering a home late at night pointing guns at small children and defenseless elderly people—then cursing profanities—destroying property—and trashing a home is outrageous and passing the boundaries of decency. Defendants' specious claim at page 17 of their memorandum that: "[t]he actions here, as alleged by Charles and Sylvia Mae Cook do not rise to the level of actionable conduct under this tort theory", is mere empty argument, lacking factual or legal analytical support. It fails to meet a sustainable summary judgment burden imposed on moving defendants by Rule 56.

Defendants continue by arguing that the Cook couple cannot show "requisite emotional harm." Contrary to the vain argument of Defendants, Plaintiffs are not required to show emotional harm beyond that already claimed in their deposition testimony. Unlike the cases cited by Defendants, Minnesota courts have

recognized that a jury issue may exist, particularly where there is aggravation of a preexisting condition, as is the case based on Mrs. Sylvia Cook's testimony.

Therefore, a Minnesota trial court must first determine whether the evidence offered to prove severe distress is sufficient to go to the jury. The court may look to the intensity and duration of the distress. Cafferty v. Garcia's of Scottsdale, Inc., 375 N.W.2d 850, 853 (Minn.Ct.App.1985). "If the claimed distress is of the type people commonly encounter and endure in their lives, then the claim should not even be submitted to the jury." Id. at 853. Even if severe emotional distress exists, the defendant may escape liability if the distress is exaggerated in comparison to what a reasonable person would experience under the circumstances, unless it results from a peculiar susceptibility to such distress of which the defendant had knowledge. Id. at 854. The supreme court has stressed the importance of a sufficient showing of the severity of the emotional injury. Hubbard, 330 N.W.2d at 440.The severity of emotional distress necessary to sustain a claim has been discussed in several cases. In Hubbard, although Hubbard testified he had been depressed and physically ill, including stomach disorders, skin rash and high blood pressure, medical evidence was conspicuously absent. Because the extent of the injury proved by the record did not exceed that of any employee criticized by an employer, the court found that the jury should not have been permitted to find the

distress was so severe that no reasonable person could expect to endure it. *Hubbard,* 330 N.W.2d at 440.

In Venes v. Professional Service Bureau, Inc._,_ 353 N.W.2d 671, 673 (Minn.Ct.App.1984), the conduct was irritating, insulting, threatening, and angered the plaintiff. The stress of the calls and litigation aggravated preexisting medical problems, such as migraines, ulcers and spastic bowel syndrome. While the question was close, this court found the evidence sufficient. *Id.* at 674. Plainly, there is adequate evidence present, particularly with respect to Mrs. Sylvia Mae Cook of aggravation of her existing (or preexisting) conditions, to send her claim of Intentional Infliction of Emotional Distress to the jury.

As to Plaintiffs claims of Negligent Infliction of Emotional Distress, Defendants misconceive the requirements for a showing of 'zone of danger' to establish the claim and the related requirement of physical manifestations of emotional distress or harm under Minnesota law.

A plaintiff may recover for negligent infliction of emotional distress when that plaintiff is within a zone of danger of physical impact, reasonably fears for his or her own safety, and consequently suffers severe emotional distress with resultant physical injury. Stadler v. Cross, 295 N.W.2d 552, 553 (Minn.1980); Leaon v. Washington County*,* 397 N.W.2d 867, 875 (Minn.1986); see also Quill v. Trans World Airlines, Inc._,_ 361 N.W.2d 438, 441-42 (Minn.Ct.App.1985), *pet. for*

*rev. denied,* (Minn. April 18, 1985). Plaintiffs have  presented facts showing they were each and all within a zone of danger of physical impact and reasonably feared for their own safety. They can therefore recover under this theory.

Moreover, an exception to the "zone of danger" rule is that a plaintiff may recover damages for mental anguish or suffering for a direct invasion of his rights, such as defamation, malicious prosecution, or other willful, wanton or malicious conduct. State Farm Mutual Automobile Insurance Co. v. Village of Isle, 265 Minn. 360, 367-68, 122 N.W.2d 36, 41 (1963); Kamrath v. Suburban National Bank, 363 N.W.2d 108, 111 (Minn.Ct.App.1985). Thus, if Plaintiffs other claims stand, they may assert negligent infliction of emotional distress.  Plainly, Timothy Cook has other valid claims because Defendants have not moved for summary judgment in its entirety. Charles and Sylvia Cook likewise have valid claims for, at a minimum, assault; therefore, their claims for Negligent Infliction of Emotional Distress should persist past summary judgment.

### III.    CHARLES AND SYLVIA COOK HAVE VALID SECTION 1983 CLAIMS BASED ON SUBSTANTIVE DUE PROCESS

Plaintiffs' other § 1983 claims are based upon the substantive component of the Due Process Clause of the Fourteenth Amendment. A state actor substantively violates the Due Process clause only when the action can properly be characterized as arbitrary, or conscience shocking in a constitutional sense. County of Sacramento v. Lewis, 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043

(1998). The Supreme Court has cautioned that the Due Process clause does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. *Id.* at 848, 118 S.Ct. 1708. However, in <u>Lewis</u>, the Court described the spectrum of conduct that can give rise to different types of liability and reasoned that constitutional liability requires egregious conduct on the part of a government official. *Id.* Negligence is considered categorically beneath the threshold of constitutional due process. *Id.* at 848-49, 118 S.Ct. 1708. Rather, an official's actions must generally be intended to inflict harm to be conscience-shocking in the constitutional sense. <u>Hawkins v. Holloway</u>, 316 F.3d 777, 785 (8th Cir.2003).   In <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 140 L. Ed. 2d 1043, 118 S. Ct. 1708 (1998), the Court explained that in cases challenging executive action on substantive due process grounds, the "threshold question" is whether the behavior of the governmental officer is so egregious as to "shock the contemporary conscience." 523 U.S. at 847 n.8. The Court emphasized that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense," *id.* at 846 (internal quotation omitted), and that the Due Process Clause prevents official abuse of governmental power as an "instrument of oppression." *Id.* (internal quotation omitted). <u>Lewis </u>observed that "historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property," *id.* at 849 (internal quotation

omitted), but allowed that "mid-level fault," such as deliberate indifference, recklessness, or gross negligence could be egregious enough to "shock the conscience" in some contexts. *Id.* Arbitrary and shocking use of police power in the guise of seeking a robbery suspect –but instead terrorizing an elderly couple and their kinsfolk cannot be denied in this case. Therefore, to the extent that these claims can be analyzed under the due process clause, particularly the conduct in harassing and abusing the Cooks after they were temporarily detained and in destroying personal property, the claims should survive. [1]

For the reasons stated in Plaintiffs' opposition to the request to dismiss the emotional distress claims, Plaintiffs claims under the due process clause— particularly as to Charles and Sylvia Cook should withstand summary judgment.[2]

## IV.   PLAINTIFFS' CLAIMS BASED ON VIOLATIONS OF THE MINNESOTA HUMAN RIGHTS ACT SURVIVE SUMMARY JUDGMENT.

Defendants either misconceive Plaintiffs' MHRA claims based on Minn. Statutes Section 363A.12 or ignore its plain import. Contrary to Defendants'

---

[1] While the use of force against the Cooks may be only questionable under Fourth Amendment standards, the reasonableness of the conduct in destroying property even as analyzed under the Fourth Amendment makes this conduct a Fourth Amendment violation. ("It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted.") See Groh v. Ramirez, 540 U.S. 551 (2004).

[2] Additionally, the Defendants have conceded that they are not entitled to qualified immunity in light of their concession as to the validity of the Fourth Amendment (Section 1983) claims of Plaintiff Timothy Blake Cook.

assertion at page 30 of their memorandum, Plaintiffs need not assert that they were

denied access to a public service where they have suffered discriminatory

treatment at the hands of those carrying out a public service—such as the

Minneapolis Police Department (the City of Minneapolis). It is well established in

Minnesota law that discriminatory or racially disparate or  hostile treatment by

police officers constitutes a violation of the "public service" provisions of the

MHRA.   See City of Minneapolis v. Richardson, 307 Minn. 80, 239 N.W.2d 197,

85 A.L.R.3d 389 (Minn. 1976)(Under uncontradicted evidence that municipal

police officers had directed racial and other epithets against 12-year old black

youth, trial court was not justified in finding that such action on part of police

officers did not constitute discrimination in "full utilization of * * * a public

service" within meaning of human rights statute. M.S.A. § 363.03, subd. 4.).  And

see State by Beaulieu v. City of Mounds View, 518 N.W.2d 567 (Minn. 1994).

Therefore, because Defendants have woefully failed to discharge their

summary judgment burden with regard to this claim, and because their apparent

view of the law is contradicted by established Minnesota Supreme Court

precedent, this Court should deny their request for summary judgment on this

claim under the MHRA (as amended).

## CONCLUSION

For all the foregoing reasons, the Motion for partial Summary Judgment of

Defendants should be denied in its entirety.


Dated:  April 7, 2007                    **s/ Albert Goins**
                                         Albert T. Goins (#126159)
                                         GOINS LAW OFFICE, LTD.
                                         301 Fourth Avenue South
                                         378 Grain Exchange Building
                                         Minneapolis, MN 55415
                                         (612) 339-3848 tel.
                                         (612) 339-3853 fax

                                         and

                                         Maya Sullivan (#33119)
                                         101 Union Plaza
                                         333 Washington Avenue North
                                         Minneapolis, MN 55401-1377
                                         (612) 763-515-0092
                                         (612) 340-0190 Fax

                                         Attorneys for Charles Everett Cook, Sylvia
                                         Mae Cook and Timothy Blake Cook