# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Charles Everett Cook, Sylvia Mae Cook,           Civil No. 06-579 (DWF/AJB)
and Timothy Blake Cook, natural persons,

        Plaintiffs,

v.                                    **MEMORANDUM**
                                        **OPINION AND ORDER**

City of Minneapolis, a municipal entity;
Officer Mark Johnson, Sergeant D. Smulski,
Officer K. Blackwell, Officer Geoffrey Toscano,
Officer Bevan Blauert, Officer Jon Petron,
Officer Christopher House, Sergeant Robert Kroll,
Officer Christie Nelson, Officer William Willner,
Officer Westlund, Officer Roger Smith, Officer
Jason King, and Officer Timothy Hanks, in their
individual, personal, and official capacities; and
Officers Jane Doe and Richard Roe, unknown and
unnamed Minneapolis Police Officers, in their
personal, individual, and official capacities,

        Defendants.

---

Albert T. Goins, Sr., Esq., Goins & Wood, PC, and Maya C. Sullivan, Esq., Law Office
of Maya C. Sullivan, L.L.C., counsel for Plaintiffs.

James Anthony Moore, Assistant City Attorney, and Tracey L. Nelson, Assistant City
Attorney, Minneapolis City Attorney's Office, counsel for Defendants.

---

**INTRODUCTION**

Following the Minneapolis Police Officers' execution of a high-risk search warrant[1] at their residence, Plaintiffs Charles Everett Cook and Sylvia Mae Cook, along with their son, Plaintiff Timothy Blake Cook, initiated this lawsuit.  In their Complaint, Plaintiffs allege constitutional violations under 42 U.S.C. § 1983 (Count V) and several state claims.  Specifically, Plaintiffs allege the following state claims:  conversion (Count I), assault (Count II), battery (Count II), intentional infliction of emotional distress (Count III), negligent infliction of emotional distress (Count IV), and discrimination in public services under Minnesota Statutes Chapter 363A (Count IV).[2]  This matter is before the Court pursuant to a motion for partial summary judgment brought by Defendants City of Minneapolis (the "City") and Officers Mark Johnson, K. Blackwell, Geoffrey Toscano, Bevan Blauert, Jon Petron, Christopher House, Christie Nelson, William Willner, Westlund, Roger Smith, Jason King, Timothy Hanks and Sergeants D. Smulski and Robert Kroll (collectively, the "Officers"), in their individual, personal, and official capacities.  For the reasons set forth below, the Court grants Defendants' motion.

---

[1]      A high-risk search warrant is a writ authorizing law-enforcement officers to make a search that may involve potential violence directed at the officers.

[2]      The claims for assault and battery are both labeled count "II," and the claims for negligent infliction of emotional distress and discrimination in public services are both labeled count "IV."  (*See* Compl.)

**BACKGROUND**

On January 13, 2005, at 10:30 p.m., the Officers executed a high-risk search warrant at a home in Minneapolis.  The Officers were searching for Cortez Cook, a suspect in an armed robbery of a pizza-delivery man.  Cortez Cook lived at the residence, which belonged to his grandparents, Charles and Sylvia Cook.  Because there was a possibility that the suspect would be armed, a "Swat Team" was required to enter and secure the home before the search team could enter.

The Swat Team entered through the front door, which was unlocked, and yelled, "police search warrant."  (Aff. of Tracey Nelson in Supp. of Mot. for Partial Summ. J. ("Nelson Aff."), Ex. 1, Statement of Officer Smith.)  When the Swat Team entered the house, Sylvia Cook, her granddaughters, Tameka and Jaquita, and their children, were in the living room.  Charles Cook and Cortez Cook were upstairs.  Timothy Cook was in the basement.  After the Swat Team secured the family members in the living room, they located Cortez Cook and brought him to the police station to be interviewed.

**Sylvia Cook's Claims**[3]

Sylvia Cook was seated in the living room with Tameka and Jaquita and their children when the Swat Team entered her house.  Everyone started screaming and she jumped up.  She testified that an Officer put a gun in her face and told her to sit down.  But she also testified that she "wasn't concerned about [the gun]" and stated, "Shoot me, because I'm too – I'm for my family, you're going to have to kill me, go on and do it, but I'm telling you."  (Nelson Aff., Ex. 7, Sylvia Cook Dep. at 11.)  She continued to scream.  She said things like, "Lord what's happening," and "What are you in here for."  (*Id.*)

Eventually she sat down until her husband came downstairs.  Then she started screaming, "My husband, you['re] going to hurt him, he's sick."  (*Id.* at 12.)  The Officers initially left the front door open when they entered the home.  It was cold outside.  Sylvia Cook continued screaming for the Officers to put a blanket over her husband.  Then she sat back down.

After that, she got up two or three more times and tried to go into the kitchen.  Each time an Officer stopped her in the dining room and pointed a gun at her and told her to go back in the living room.  Also, each time the Officer put the Officer's hands around her arms or her shoulder and directed her toward the living room.  The Officers never

---

[3]     The Court does not rely on Charles and Sylvia Cook's post-deposition affidavits to the extent that they contradict their sworn deposition testimony.  *See Marathon Ashland Petroleum, LLC. v. Int'l Bhd. of Teamsters*, 300 F.3d 945, 951 (8th Cir. 2002) (holding that a plaintiff may not defeat summary judgment by filing an affidavit contradicting deposition testimony).

(Footnote Continued on Next Page)

pushed or shoved her and never handcuffed her.  The Officers eventually covered her husband and great-grandchildren with blankets and shut the front door.

The Officers used profanity.  Specifically, the Officers said, "Fuck you bitch," "Sit your ass down," "Fuck yawl," "God damn," and "Hell."  (Further Suppl. Decl. of Albert T. Goins in Supp. of Pls.' Resp. to Defs.' Mot. for Partial Summ. J. ("2nd Suppl. Decl. of Goins"), ¶ 2, Dep. of Sylvia Cook at 38.)  In addition, Sylvia Cook saw the Officers take mail from the house, which they put in a bag.  She also saw an Officer take "something out of the back," but she "doesn't know what it was."  (*Id.* at 21.)

A couple days after the search, Sylvia Cook "came down with a bad case of bronchitis."  (*Id.* at 22.)  She said the bronchitis was caused by the search because she did not have any shoes on when the Officers entered and created a draft through the open front door.  She also testified that she is afraid, does not feel safe in her house, and has had nightmares since the incident.  She did not see a doctor for her nightmares, but saw one for her bronchitis.  At the time of the search, she suffered from seizures and continues to have seizures.

**Charles Cook's Claims**

Charles Cook is a 72-year old man who suffers from diabetes.  At the time the Officers entered, Charles Cook had a shunt in his neck that contained exposed wires for connection with a dialysis machine.

---

(Footnote Continued From Previous Page)

After the Officers entered the house, Charles Cook came down the stairs.  When he reached the last step, an Officer shoved him down to the ground with the Officer's hands.[4]  An Officer placed his foot on Charles Cook's side and held him down while pointing a gun at him.  Charles Cook was exposed to the cold air while lying on the ground.  Charles Cook testified that no Officer ever kicked him.[5]  The Officers did not handcuff him.  Once the Swat Team cleared the house, the Officers took Charles Cook to a sofa in the living room and gave him a blanket.

Charles Cook testified that for about a week after the search, he experienced stiffness due to his exposure to the cold air.  He also testified that he has had nightmares since the incident about people coming into his home.  He did not see a doctor regarding his stiffness or nightmares.

**Timothy Cook's Claims**

Timothy Cook came upstairs from the basement when the Officers entered the home.  An Officer grabbed him by the arm and pushed him through a doorway.  Timothy Cook was then moved into the entryway in front of the front door and was told to put his

---

[4]     Several Officers stated that Charles Cook did not comply with their commands to get on the ground and that he argued with them.

[5]     But Sylvia Cook testified that she saw an Officer kick Charles Cook once "on the side or back."  (Nelson Aff., Ex. 7, Sylvia Cook Dep. at 15.)  Additionally, Sergeant Kroll stated in his police report that he "kicked [Charles Cook] down onto the ground" after he refused to comply with his order to get on the floor and instead demanded to see the search warrant.  (Nelson Aff., Ex. 1, Statement of Sergeant Kroll.)  Sergeant Kroll further explained in his deposition, "It wasn't a kick with a thrust to my toe for pain compliance impact," and instead stated that he used "the bottom of [his] foot to push him to the

(Footnote Continued on Next Page)

hands behind his head and get on his knees.  He repeatedly asked the Officers why they were there.  He also repeatedly yelled for their field sergeant or lieutenant.

The Officers responded to his requests with profanity.  Specifically, the Officers stated, "Shut the fuck up," "Get your ass over there," "Shut the hell up," and "Fuck you." (Nelson Aff., Ex. 8, Timothy Cook Dep. at 15.)  Timothy Cook testified that an Officer "slammed" him down to the ground and told him to put his hands behind his back.  (*Id.* at 17.)  The Officers did not handcuff him, but they strapped his hands behind his back with a strap.  Timothy Cook testified that he still continued yelling and requesting to speak to the field sergeant.  He then testified that the Officers put a coat over his head, which he managed to shake off.

Timothy Cook stated that one Officer told him that he was the field sergeant. Timothy Cook told him "that that wasn't true, because he would not have been there if he was a field sergeant or lieutenant." (*Id.* at 16.)  Timothy Cook heard the Officers explain to Charles Cook why they were there and saw them show Charles Cook the search warrant.  Timothy Cook then demanded to see the search warrant.

Timothy Cook alleges that Officers kicked him in the head and back.  He also alleges that the Officers stepped on his back and head more than twenty times while he lay in front of the front door as they entered and exited the house.  He continued to ask to see the search warrant and to tell the Officers where they could search.  He told the

(Footnote Continued From Previous Page)
ground."  (Decl. of Albert Turner Goins ("Goins Decl."), Lt. Robert Kroll Dep. at 14.)

Officers and his father that he was his father's proxy and power of attorney and that he had the right to see the warrant.  In response, Timothy Cook was taken outside and "put into a squad car and forced to listen to country music."  (Nelson Aff., Ex. 8, Timothy Cook Dep. at 26.)  The Officers later took Timothy Cook to jail and told him they were arresting him for interference with judicial process.  When Timothy Cook was asked at his deposition if he knew what was taken from the house he replied, "I didn't see any – I saw them – I saw somebody go around the house with a bag, I don't know what that was.  Those were the police officers."  (*Id.* at 30.)

Sylvia Cook heard the Officers tell Timothy Cook that they would take him out of the house if he did not comply with their demands.  Sylvia Cook attributes Timothy Cook's behavior to "watching too much damned TV."  (Nelson Aff., Ex. 7, Sylvia Cook Dep. at 20.)  Charles Cook also heard Timothy Cook objecting to the Officers' questions.

Timothy Cook sustained pain to his shoulder from having his arms secured behind his back and a "few bumps and bruises."  (Nelson Aff., Ex. 8, Timothy Cook Dep. at 29.)  Specifically, Timothy Cook sustained bruises to his knees and light bruises under his chest area.  He also said that his pride was injured and that he is mad.  Although he does not believe it, Timothy Cook stated that some of his friends say that he is angrier since the incident.  He has not sought any medical care for his injuries.  When asked if he has had trouble sleeping since the search, Timothy Cook replied that he has always had trouble sleeping and is usually up working on his computer.  He acknowledged that he dreams about the incident, but stated, "It's no big deal to me."  (*Id.* at 31.)

8

**Procedural Posture**

Plaintiffs commenced this lawsuit alleging excessive force, summary punishment, violations of due process, and deprivation of liberty rights and interests under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and various state claims. Defendants move to dismiss all claims asserted by Charles Cook and Sylvia Cook. [6] Additionally, Defendants move to dismiss Timothy Cook's claims of conversion, intentional infliction of emotional distress, negligent infliction of emotional distress, violations of summary punishment, due process, and deprivation of liberty interests and rights under the Fifth, Eighth, and Fourteenth Amendments, and discrimination in public services under Minn. Stat. § 363A. [7]

---

[6]     In their opposition brief, Plaintiffs fail to respond to Defendants' assertions that Plaintiffs have failed to state a *Monell* claim against the City, that the City is entitled to vicarious official immunity, that Plaintiffs have failed to state a claim for violation of the First Amendment, and that Plaintiffs' claims for summary punishment, due process under the Eighth Amendment, and deprivation of liberty interests must be dismissed. Because Plaintiffs have failed to respond to these arguments, they have abandoned these claims. *See Thomsen v. Ross*, 368 F. Supp. 2d 961, 974 n.9 (D. Minn. 2005) (concluding that plaintiff had abandoned claims not addressed in his opposition to summary judgment motion).

[7]     Defendants do not seek summary judgment on Timothy Cook's excessive force, assault, and battery claims. Although they do not concede these claims, they acknowledge that Timothy Cook's testimony that Officers repeatedly kicked him in the head creates a fact issue.

**DISCUSSION**

**I.      Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record, which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.       Section 1983 Claims

Section 1983 prohibits a person acting under color of state law from depriving

another person of his or her "rights, privileges, or immunities secured by the Constitution

and laws . . . ."  42 U.S.C. § 1983.

### A.       Qualified Immunity

The Officers contend that they are entitled to qualified immunity on Plaintiffs'

§ 1983 claims.  Qualified immunity shields government officials as well as private

individuals from civil liability under 42 U.S.C. § 1983.  *Wilson v. Layne*, 526 U.S. 603,

614 (1999).  A defendant is shielded from civil liability if it is shown that his or her

"conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

On a motion for summary judgment, the Court employs a three-part test to determine

whether qualified immunity exists.  *Goff v. Bise*, 173 F.3d 1068, 1072 (8th Cir. 1999)

(citing *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996)).

First, the plaintiff must assert a violation of a constitutional right.  *Id.*  Second, the

alleged right must be clearly established.  *Id.*  Third, taking the facts in the light most

favorable to the plaintiff, there must be no genuine issues of material fact as to whether a

reasonable official would have known that the alleged action violated the plaintiff's

clearly established rights.  *Id.*  If the Court determines that the facts, viewed in the light

most favorable to the injured party, do not establish a violation of a constitutional right,

no further inquiry is necessary.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "Qualified

11

immunity is available 'to all but the plainly incompetent or those who knowingly violate the law.'" *Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

**B.      Excessive-Force Claim Under 42 U.S.C. § 1983**

It appears that Charles and Sylvia Cook have abandoned their excessive force claims because in their response brief they do not directly respond to Defendants' arguments.  Moreover, they do not respond to the Officers' assertion that they are entitled to qualified immunity on any § 1983 claim.  But in any event, these claims fail on the merits.

The Court first examines whether Charles and Sylvia Cook have asserted a violation of a constitutional right.  The Court evaluates excessive force claims under an objective-reasonableness test.  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  In determining whether the use of force is "reasonable" under the Fourth Amendment, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the government interests at stake.  *Id.* at 396 (citation omitted).  The reasonableness of the use of force must be judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *See id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).  The reasonableness determination also must make allowances for the fact that police officers make split-second judgments in oftentimes tense situations.  *Graham*, 490 U.S. at 396–97.  Therefore, the United States Supreme Court has set out the reasonableness inquiry as one that requires courts to

12

determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 137–39 (1978)).

Viewing the facts in the light most favorable to Charles and Sylvia Cook, the Court concludes that a reasonable jury could not conclude that the Officers used excessive force. Here, the Officers were executing a valid high-risk search warrant at the home of a suspected armed robber. No reasonable jury could conclude that pointing a gun at Sylvia Cook, putting a hand on her to guide her back to the living room after she repeatedly disobeyed orders, and using profanity constitute excessive force. *See Arndt v. Stillman*, No. 04-3905DSDJJG, 2006 WL 212195, at *8 (D. Minn. 2006) (dismissing excessive force claim when during execution of a search warrant, officer grabbed plaintiff from behind, handcuffed him, physically forced him to the ground, placed a knee on his upper back after handcuffing, and held a gun to his temple); *Frison v. Zebro*, No. 00-2688, 2002 WL 539069, at *6 (D. Minn. 2002) (dismissing excessive force claim when during the execution of a search warrant, officer pointed a gun at plaintiff). Although the Court finds that the Officers' conduct was not actionable, the Court is deeply troubled by the Officers' use of profanity. The Officers' use of such language is offensive and unprofessional and it degrades the law-enforcement profession.

Likewise, no reasonable jury could conclude that the Officers used excessive force against Charles Cook. Although he denies being kicked, viewing the evidence in the light most favorable to him, an Officer kicked him once in his back or side based on Sylvia

Cook's testimony and the Officer's own police report.  But Charles Cook does not allege that he suffered any injury as a result of the kick.

The Eighth Circuit has ruled that the minimum level of injury required for a Fourth Amendment excessive force claim is actual injury.  *Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999); *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995).  Further, the Eighth Circuit has ruled that "a de minimus . . . injury is insufficient to support a finding of a constitutional violation."  *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003); *see also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) (concluding that injuries including a sore neck, horrible headache, painful flare-up of pre-existing back injuries resulting from defendant's forceful hit were insufficient to establish an excessive-force claim).  Thus, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Id.* (quotation omitted).

Here, Charles Cook himself disputes that the Officer kicked him.  And even if Sylvia Cook's testimony and the Officer's report are true, Charles Cook does not allege any injury in connection therewith.  The only injury he alleges is stiffness, which he contends was due to the cold air blowing on him.  The Court does not condone the Officer's kicking if it occurred.  Even when executing a search warrant, it should be a rare case in which an officer must resort to kicking people—particularly unarmed elderly people.  But under Eighth Circuit caselaw, Charles Cook's claim fails because he does not allege that the kick caused any injury.  Consequently, Charles and Sylvia Cook have not

14

established that the Officers violated their constitutional rights to be free from excessive force and have therefore failed to establish the first prong of the test.  Accordingly, the Officers are entitled to qualified immunity and the Court grants summary judgment on Charles Cook's and Sylvia Cook's excessive-force claims.

### C.    Substantive Due-Process Claims Under 28 U.S.C. § 1983

Plaintiffs allege that the Officers violated their substantive-due-process rights. Again, Plaintiffs fail to respond to the Officers' assertion that they are entitled to qualified immunity.  At any rate, this claim also fails.

To establish a substantive due process violation, Plaintiffs must show that the Officers' conduct:  (1) was "conscience shocking" and (2) violated "one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Terrell v. Larson*, 396 F.3d 975, 978 n.1 (8th Cir. 2005) (citation omitted).  Plaintiffs essentially base their claims on the Officers' alleged violations of the Plaintiffs' Fourth Amendment right to be free from excessive force.  But it is well-settled that § 1983 excessive-force claims must be analyzed under the Fourth Amendment's "objective reasonableness standard."  *Saucier*, 533 U.S. at 201–02.  Therefore, Plaintiffs cannot base their substantive-due-process claims on their alleged excessive-force claims. *Smithson v. Aldrich*, 235 F.3d 1058, 1064 (8th Cir. 2000).  Accordingly, the Officers are entitled to summary judgment on these claims.

III.    **State Tort Claims**

The Officers assert that Plaintiffs have failed to state claims for conversion, negligent infliction of emotional distress, intentional infliction of emotional distress, assault, and battery.  Alternatively, the Officers assert that the doctrine of official immunity precludes Plaintiffs' state tort claims against them.  Specifically, the Officers contend that they are entitled to official immunity on each Plaintiff's claims for conversion, negligent infliction of emotional distress, and intentional infliction of emotional distress.  Additionally, the Officers contend that they are entitled to official immunity on Charles Cook's and Sylvia Cook's assault and battery claims.

A.    **Conversion**

Under Minnesota law, conversion is defined as "an act of willful interference with the personal property of another which is without justification or which is inconsistent with the rights of the person entitled to the use, possession or ownership of the property." *Bloom v. Hennepin County*, 783 F. Supp. 418, 440 (D. Minn. 1992) (quoting *Dain Bosworth, Inc. v. Goetze*, 374 N.W.2d 467, 471 (Minn. Ct. App. 1985)).  In the Complaint, Plaintiffs allege that during the search, the Officers took "a total of $160" from Charles and Sylvia Cook's grandchildren and other household belongings.  (Compl. at ¶ 10.)  Additionally, in Plaintiffs' opposition brief, Timothy Cook asserts that the Officers destroyed "certain computer or electronics equipment" during the search.  (Pls.' Mem. in Opp'n to Partial Summ. J. Mot. ("Pls.' Opp'n Mem.") at 11.)

The Court finds that Plaintiffs have not established a prima facie case of

16

conversion because Plaintiffs do not cite to any evidence in the record supporting the allegations in their Complaint or brief.  Plaintiffs merely state that "[t]he claim that officers destroyed property wantonly . . . is supported by the testimony of Plaintiffs." (Pls.' Opp'n Mem. at 11.)  It is not the Court's duty to sift through the record in search of facts to support Plaintiffs' claims.  *See Nw. Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662–63 (7th Cir. 1994) ("District Judges are not archaeologists.").

Nonetheless, after reviewing the deposition testimony, the Court concludes that there is no specific evidence supporting this claim.  Charles Cook testified that the only thing the Officers took from the house was "a bag . . . with a lot of papers and stuff in it." (Charles Cook Dep. at 34.)  Likewise, Timothy Cook and Sylvia Cook gave similarly vague answers at their depositions when asked what the Officers took.  Moreover, Plaintiffs lack standing to assert a claim of conversion for their grandchildren/nieces. Thus, without stating what the Officers allegedly took from the house, the Court finds that this claim fails.  Accordingly, the Officers are entitled to summary judgment on Plaintiffs' conversion claims.

## B.    Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress:  (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.  *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn. 1983) (citing Restatement (Second) of Torts § 46(1) (1965)).

17

Charles and Sylvia Cook have not demonstrated that the Officers' behavior was "extreme and outrageous." "Extreme and outrageous" conduct is that which is "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* at 439. Here, the Officers were executing a high-risk search warrant at the home of a suspected armed robber. The Officers knew that the occupants could have guns and therefore entered with their guns drawn. The alleged kick of Charles Cook and lack of injury does not constitute "extreme and outrageous" conduct. Additionally, the Officers' behavior of pointing a gun at Sylvia Cook and putting a hand on her shoulder or back to guide her out of the kitchen during the search does not constitute "extreme and outrageous" conduct. Likewise, although the civilized community may not condone the use of profanity, it is not "utterly intolerable" under the stressful situation of executing a high-risk search warrant, including facing the Plaintiffs' repeated and continuous screaming, yelling, and failure to obey orders.

Additionally, none of the Plaintiffs have demonstrated that they suffered severe emotional distress. "Severe emotional distress" is "distress so severe that a reasonable person could not be expected to endure it. *Id.* Plaintiffs conclude that they have suffered emotional stress by experiencing regular nightmares and fear while in their own home. The Court finds that having nightmares and fear in the home does not constitute distress so severe that a reasonable person could not be expected to endure it. Indeed, the Court has no doubt that any reasonable person would experience nightmares and fear in their home after a Swat Team had descended upon their home at 10:30 p.m. to execute a valid

18

high-risk search warrant in pursuit of an armed robber.  Thus, under the circumstances of this case, Plaintiffs' alleged emotional injuries are not severe as required to establish a claim of intentional infliction of emotional distress.  *See id.* 440 ("The extent of the 'injury' proven by this record does not exceed that of any employee who experiences an employer's criticism or reproof concerning job performance."); *Eklund v. Vincent Brass and Aluminum Co.*, 351 N.W.2d 371, 379 (Minn. Ct. App. 1984) (recognizing that the employee's experience of depression and embarrassment "was not dissimilar to that of many laid-off employees").  Thus, Plaintiffs have failed to demonstrate a prima facie case of intentional infliction of emotional distress, and summary judgment is appropriate on these claims.

**C.     Negligent Infliction of Emotional Distress**

To state a claim for negligent infliction of emotional distress, a plaintiff must prove the four elements of a negligence claim—duty, breach, injury, and causation. *Engler v. Ill. Farmers Ins. Co.*, 706 N.W.2d 764, 767 (Minn. 2005) (quotation omitted). In addition to the elements of negligence, a plaintiff claiming negligent infliction of emotional distress must also prove:  (1) presence in the zone of danger of physical impact; (2) reasonable fear for the plaintiff's safety; and (3) severe emotional distress "with attendant physical manifestations." *Id.*  The physical manifestation requirement "is designed to assure the genuineness of the emotional distress." *Silberstein v. Cordie*, 474 N.W.2d 850, 857 (Minn. Ct. App. 1991).

Here, Plaintiffs' negligent-infliction-of-emotional-distress claims fail because Plaintiffs cannot establish that they suffered severe emotional distress with physical manifestations.  Plaintiffs attempt to rely on an exception to the requirement that a plaintiff must show physical injury to recover on a negligent-infliction-of-emotional-distress claim.  Under the exception, a plaintiff may be entitled to damages for mental distress without showing physical injury if "there is some conduct constituting a direct invasion of her rights, such as slander, libel, malicious prosecution, willful, wanton or malicious misconduct." *Kamrath v. Suburban Nat'l Bank*, 363 N.W.2d 108, 111 (Minn. Ct. App. 1985) (citing *State Farm Mutual Auto Ins. Co. v. Village of Isle*, 265 Minn. 360, 367, 368, 122 N.W.2d 36, 41 (1963)).  Although Timothy Cook has stated claims for assault and battery and therefore might have demonstrated conduct constituting a direct

20

invasion of his rights, he has not alleged that he suffered severe emotional distress.  He

has only stated that his pride was hurt and that he is mad.  Although he stated that he has

had nightmares, he testified that they do not bother him.  Therefore, Defendants are

entitled to summary judgment on each Plaintiffs' negligent-infliction-of-emotional-

distress claims.

### D.      Assault and Battery

An assault is an unlawful threat to do bodily harm to another with the present

ability to carry out the threat.  *Johnson v. Morris*, 453 N.W.2d 31, 41 (Minn. 1990).

"Battery is an intentional, unpermitted offensive contact with another."  *Id.* at 41.

Plaintiffs Charles and Sylvia Cook assert that the Officers assaulted them by displaying

their guns.  Plaintiffs' only specific argument regarding their battery claims is that "a

factual dispute exists as to the actions of the officers[.]"[8]  (Pls.' Opp'n Mem. at 11.)  The

Court finds that even if Charles and Sylvia Cook have stated claims for assault and

battery, the Officers are entitled to official immunity.

Under Minnesota law, public officials are automatically entitled to official

immunity from state-law claims when their duties require the exercise of discretion, so

long as the officer is not guilty of a willful or malicious wrong.  *See Johnson*, 453

N.W.2d at 41–42; *Elwood v. County of Rice*, 423 N.W.2d 671, 677 (Minn. 1988).

---

[8]      Plaintiffs fail to support this and other statements with citations to the record,
which is critical at the summary-judgment stage.  Moreover, the Court notes that
Plaintiffs have not distinguished the actions among the various Officers that they have

(Footnote Continued on Next Page)

Malice, in the official immunity context, means intentionally committing an act that the official has reason to believe is legally prohibited. *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994). In determining whether the official acted with malice, the Court conducts an objective inquiry that examines the legal reasonableness of an official's actions. *Id.* To overcome a defense based on official immunity, a plaintiff cannot rely on "bare allegations of malice"; rather, a plaintiff must present specific facts evidencing bad faith. *Harlow*, 457 U.S. at 817.

Plaintiffs do not dispute that the Officers' actions were discretionary. Instead, Plaintiffs contend that the Officers' conduct of entering the residence with weapons drawn, use of profanity, and kicking Charles and Timothy Cook is evidence of willful conduct. The Court finds, however, that the Officers are entitled to official immunity on these claims for the same reasons they are entitled to qualified immunity on Charles and Sylvia Cook's excessive-force claims.

Here, the Officers executed a high-risk search warrant at the home of a suspected armed robber. They were allowed to use reasonable force. *See* Minn. Stat. § 609.06(1) (authorizing a public officer or one assisting a public officer to use reasonable force to make an arrest, execute legal process, enforce a court order, or to execute a duty on the officer imposed by law). In doing so, despite her screaming at the Officers and disobeying their orders to stay in the living room, the Officers never handcuffed Sylvia

_____

(Footnote Continued From Previous Page)
sued.

Cook.  And presuming that an Officer kicked Charles Cook, which he denies, the Court

cannot say that such conduct evidences malice under the circumstances of executing a

high-risk search warrant in which the Officers anticipated an armed robber was present

and where there was no actual injury.  Viewing the facts in the light most favorable to

Charles and Sylvia Cook, the Court finds that the Officers' conduct was not willful or

malicious.  Accordingly, the Officers are entitled to summary judgment on Charles and

Sylvia Cook's assault and battery claims.

## IV.    Minnesota Human Rights Act Claim

Plaintiffs allege that Defendants discriminated against them based on race

in public services pursuant to the Minnesota Human Rights Act, Minn. Stat. § 363A,

*et seq*.  Minn. Stat. § 363A.12, subd. 1, provides:

> It is an unfair discriminatory practice to discriminate against any person in
> the access to, admission to, full utilization of or benefit from any public
> service because of race, color, creed, religion, national origin, disability,
> sex, sexual orientation, or status with regard to public assistance or to fail to
> ensure physical and program access for disabled persons unless the public
> service can demonstrate that providing the access would impose an undue
> hardship on its operation.

Here, Plaintiffs have failed to show that the Officers acted in a racially hostile manner.

Therefore, Plaintiffs have failed to state a claim under Minn. Stat. § 363A.12, subd. 1, and

Defendants are entitled to summary judgment.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that**:**

1.    Defendants' Motion for Partial Summary Judgment (Doc. No. 23)

is **GRANTED**.

2.      Plaintiffs Charles and Sylvia Cook's claims are **DISMISSED WITH**

**PREJUDICE**.

3.      Plaintiff Timothy Cook's claims for conversion (Count I), intentional

infliction of emotional distress (Count III), negligent infliction of emotional distress

(Count IV), discrimination in public services under Minn. Stat. § 363A (Count IV), and

violations of summary punishment, due process, and deprivation of liberty interests and

rights under the Fifth, Eighth, and Fourteenth Amendments (under Count V) are

**DISMISSED WITH PREJUDICE**.


Dated:  May 30, 2007              s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  Judge of United States District Court